**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Universal Surveillance Corporation, | ) | CASE NO: 5:11CV1755 |
| | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN ADAMS |
| | ) | |
| v. | ) | **ORDER AND DECISION** |
| | ) | |
| Checkpoint Systems, Inc., | ) | (Resolving Doc. 28) |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter comes before the Court on a motion to dismiss filed by Defendant Checkpoint Systems, Inc. ("Checkpoint"). Doc. 28.  Having reviewed the pleadings, briefs, and applicable the law, the Court hereby DENIES the motion.

## I. Facts

Plaintiff Universal Surveillance Corporation ("USS") filed its 30-page, 10-count complaint on August 19, 2011.  USS and Checkpoint are competitors in the loss prevention industry.  Specifically, both manufacture and sell electronic article surveillance ("EAS").  In lay terms, they make the small security labels that often trigger alarms when one attempts to leave a store.  There are two primary types of EAS systems in the United States – Radio Frequency ("RF") and Audio-Magnetic ("AM").  The complaint largely sounds in antitrust, contending that Checkpoint holds an 80% share of the market for RF systems and has engaged in anticompetitive conduct surrounding these systems.

On October 28, 2011, Checkpoint moved to dismiss the entire complaint.  The Court held a case management conference on November 1, 2011.  During the conference, the Court agreed to stay discovery pending resolution of the motion.  The Court also indicated that it felt strongly that the complaint had been sufficiently pled and that the motion to dismiss could be dealt with in a summary fashion.  USS opposed the motion to dismiss on November 8, 2011, and Checkpoint replied on November 15, 2011.  The Court now resolves the motion.

## II.  Legal Standard

The Sixth Circuit stated the standard for reviewing a motion to dismiss in *Assn. of Cleveland Fire Fighters v. Cleveland*, 502 F.3d 545 (6th Cir. 2007) as follows:

> The Supreme Court has recently clarified the law with respect to what a plaintiff must plead in order to survive a Rule 12(b)(6) motion.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).  The Court stated that "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1964-65 (citations and quotation marks omitted).  Additionally, the Court emphasized that even though a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Id.* (internal citation and quotation marks omitted).  In so holding, the Court disavowed the oft-quoted Rule 12(b)(6) standard of *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) (recognizing "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"), characterizing that rule as one "best forgotten as an incomplete, negative gloss on an accepted pleading standard." *Twombly*, 550 U.S. at 563.

*Id.* at 548.  Instead, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (internal quotations omitted).

If an allegation is capable of more than one inference, this Court must construe it in the plaintiff's favor. *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995) (citing *Allard v. Weitzman*, 991 F.2d 1236, 1240 (6th Cir. 1993)). This Court may not grant a Rule 12(b)(6) motion merely because it may not believe the plaintiff's factual allegations. *Id.* Although this is a liberal standard of review, the plaintiff still must do more than merely assert bare legal conclusions. *Id.* Specifically, the complaint must contain "either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988) (quotations and emphasis omitted).

### III. Analysis

Before beginning an analysis, the Court notes the cautions put in place by the U.S. Supreme Court in *Twombly*:

> Thus, it is one thing to be cautious before dismissing an antitrust complaint in advance of discovery, cf. *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 473 (1962), but quite another to forget that proceeding to antitrust discovery can be expensive. As we indicated over 20 years ago in *Associated Gen. Contractors of Cal., Inc. v. Carpenters*, 459 U.S. 519, 528, n. 17 (1983), "a district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed." *See also Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984) ("[T]he costs of modern federal antitrust litigation and the increasing caseload of the federal courts counsel against sending the parties into discovery when there is no reasonable likelihood that the plaintiffs can construct a claim from the events related in the complaint"); Note, Modeling the Effect of One–Way Fee Shifting on Discovery Abuse in Private Antitrust Litigation, 78 N.Y. & U. L.Rev. 1887, 1898–1899 (2003) (discussing the unusually high cost of discovery in antitrust cases); *559 Manual for Complex Litigation, Fourth, § 30, p. 519 (2004) (describing extensive scope of discovery in antitrust cases); Memorandum from Paul V. Niemeyer, Chair, Advisory Committee on Civil Rules, to Hon. Anthony J. Scirica, Chair, Committee on Rules of Practice and Procedure (May 11, 1999), 192 F.R.D. 354, 357 (2000) (reporting that discovery accounts for as much as 90 percent of litigation costs when discovery is actively employed).

*Twombly*, 550 U.S. at 558.  With this in mind, the Court resolves the pending motion.

Initially, Checkpoint claims that USS fails to properly allege antitrust injury, depriving it of standing to pursue such a claim.  In that regard, "a complaint alleging only adverse effects suffered by an individual competitor cannot establish an antitrust injury." *Care Heating & Cooling, Inc. v. American Standard, Inc.*, 427 F.3d 1008, 1014-15 (6th Cir. 2005).  USS, however, does not solely allege injury to itself.  Rather, the complaint alleges that customers have been deprived of meaningful choice by Checkpoint's conduct, that costs to enter the market have increased because of the conduct, and that Checkpoint's conduct threatens to drive competitors out of the market.

Checkpoint appears to take the position that USS must individually name the market participants that have been injured and specifically identify their lost sales or profits.  However, such a precise pleading standard has never been adopted.  USS has properly alleged an injury to the market and therefore has standing to pursue this antitrust action.

Checkpoint next alleges that USS failed to plead a relevant market.  "Because market definition is a deeply fact-intensive inquiry, courts hesitate to grant motions to dismiss for failure to plead a relevant product market."  *National Hockey League Players Assoc. v. Plymouth Whalers Hockey Club*, 419 F.3d 462, 472 n.3 (6th Cir. 2005) (citing *Todd v. Exxon Corp.*, 275 F.3d 191, 199-200 (2d Cir. 2001)).

While numerous arguments are raised, the Court finds no merit in Checkpoint's contentions.  First, the complaint specifically alleges a dramatic distinction between RF and AM systems.  Accordingly, at this stage of the case, the Court does not find that the relevant market as alleged is too narrow.  Furthermore, Checkpoint once again demands

more specificity than is required even under the heightened standard announced in *Twombly*.  Checkpoint takes issue with the class proposed by USS – food and drug retailers.  Checkpoint appears to contend that this class needs to be more precisely defined.  The Court finds the class to be sufficiently clear to survive a motion to dismiss.

Checkpoint next asserts that the Sherman Act claims must fail because the alleged agreements between Checkpoint and its customers are not actionable.

> Rule of reason analysis requires the plaintiff to prove (1) that the defendant(s) contracted, combined, or conspired; (2) that such contract produced adverse anticompetitive effects; (3) within relevant product and geographic markets; (4) that the objects of and conduct resulting from the contract were illegal; and (5) that the contract was a proximate cause of plaintiff's injury.

*Care Heat*, 427 F.3d at 1015.  In the complaint, USS alleges that Checkpoint has entered into exclusive dealing contracts with many of its customers.  Checkpoint argues that it is well-established that customers have the right to choose their suppliers.  Checkpoint, however, ignores the allegations in the complaint.  The complaint alleges that Checkpoint predicated its contracts upon its customers agreeing to exclusively deal with Checkpoint and no other supplier.  Given the nature of the allegation, the Court finds that an antitrust claim could be established under the rule of reason analysis described above.

Once more here, Checkpoint also asserts that the allegations in this section of the complaint fail to contain customer names, contract durations, dates, and other particular details.  However, the complaint specifically describes the type of contracts at issue, the alleged duration of those contracts, and the effect of those contracts on the market.  As such, the Court believes the complaint goes well beyond the "possible" standard denounced in *Twombly*.

The Court also rejects the argument that USS's allegations of exclusive dealing, bundled discounts, predatory pricing, and false advertising do not state sufficient facts to establish actionable conduct.  Similarly, the exclusive contracts allegations are sufficient to state a claim under the Clayton Act.

Like its other arguments, Checkpoint takes issue with the specificity of the allegations surrounding the Lanham Act claim.  Checkpoint contends that USS failed to identify the false statements, failed to identify when they were made, failed to identify the false portions of the statements, and failed to allege their materiality.  Paragraphs 61 through 66 of the complaint rebut these arguments in their entirety.  The Lanham Act claim has been properly pled.  USS alleges that Checkpoint repeatedly informed customers that USS was not an "innovator" and was "merely" a reseller of Chinese products.  The complaint goes on to allege that USS is not "merely" a reseller. Moreover, USS specifically alleges that customers were confused and believed that USS was little more than a middle-man for a Chinese entity.  Those allegations are sufficient to state a Lanham Act claim.

Finally, the Court finds that each of the state law claims has been pled with sufficient specificity to survive the current motion to dismiss.

**IV.    Conclusion**

As the Court indicated to the parties at the CMC, the complaint herein is lengthy and contains sufficient detail to place Checkpoint on proper notice of each of the claims against it.  If those claims turn out to be unsupported by any discovery, Checkpoint will most certainly point that out to the Court and seek appropriate sanctions.  However, its

arguments time and again that the complaint was based on "information and belief" rather than fact are insufficient to warrant dismissal.

It appears clear that the parties are already entangled in litigation over intellectual property and that this is simply a carryover of that litigation.  Accordingly, USS would be well advised to move promptly through discovery to ascertain whether all ten counts in the complaint should move forward.  At this time, the pleading standard for each has been met.  Accordingly, the motion to dismiss is DENIED.

IT IS SO ORDERED

February 6, 2012          _____/s/ Judge John R. Adams_____
Date                                JUDGE JOHN R. ADAMS
                                         UNITED STATES DISTRICT COURT